## NEW YORK SUPERIOR COURT.

ALEXANDER DUNCAN and others, appellants agt. JACOB GOSCHE and HENRY D. PALMER, respondents.

Where a *promissory note* is obtained by false representations, or is without consideration, or is misapplied, and the owner and holder accepts and discounts it as a *further and additional security* for the payment of a debt then due from the payee, he cannot recover of the maker.

*General Term, July*, 1861.

BOSWORTH, Ch. J., MONCRIEF and WHITE, *Justices.*

THIS was an appeal by the plaintiffs, composing the banking firm of Duncan, Sherman & Co., of this city, from a judgment against them in favor of the defendants, and from an order of the special term denying their motion for a new trial on a case and exceptions.

This suit was against the respondents by the appellants on two promissory notes for one thousand dollars each, at four and six months respectively, dated June 7, 1859, made by the respondent, Gosche, and indorsed by the respondent, Palmer, who compose the firm of Palmer & Co., libretto publishers of this city.

The facts, as they appeared from the case presented to the court, were as follows :

The appellants brought this action, as the holders and owners of the notes in suit, and in their complaint allege

that, before maturity of the notes in question, they were duly transferred and delivered to them for "full value."

The respondents in their answer distinctly state that the notes in question were obtained from them, and that they were induced to make and indorse the same by one Isaac Jacobsohn, by means of false and fraudulent representations, and that Jacobsohn had represented to them that he was authorized, by Bernard Ullman, the lessee of the Academy of Music, in this city, to receive from them these notes as part consideration money for a contract for the sale of librettos in said Academy of Music, and elsewhere, and that the notes were to be immediately delivered by Jacobsohn to Ullman, and by him handed to Mr. Kingsland, the person mentioned in the contract, and that the notes were to be used for no other purpose. The respondents never got the contract from Ullman as promised them by Jacobsohn, when he received from them these notes, nor did they receive any consideration for them, nor did the notes ever come to the hands of either Ullman or Kingsland. On the contrary, the respondents were subsequently obliged to pay Kingsland the consideration expressed in the contract. After Jacobsohn had thus procured these notes, instead of delivering them to Ullman, to be delivered to Kingsland, as he promised to do at the time he procured them, he misapplies them, and commits a fraud upon the rights of the respondents, by handing the notes over to the appellants, Duncan, Sherman & Co., as a further security to pay an old indebtedness due from him to Duncan, Sherman & Co. He, Jacobsohn, testifying on the trial:

"I owed Duncan, Sherman & Co. more than the amount of these notes; I guess I owed them three or four thousand dollars; Duncan, Sherman & Co. had the stock of the Academy of Music as security for this debt. This last year the stock sold for one thousand dollars each share; I signed a little printed thing when I gave the stock to Mr. Sherman. The understanding was, that if these notes were

paid, I was to get back the stock; I also delivered to Duncan and Sherman one note for $390, and another for $1,340. When I delivered the notes, drawn by the defendants, to Duncan and Sherman, I received no money; they discounted them, and I paid my debt with them. The understanding was, when I delivered them to Sherman, that when these notes were paid, I was to get back my stock."

Jacobsohn had no authority from either Ullman or Kingsland to demand or receive these notes from the respondents, nor to deposit or leave them with the appellants, and that the notes were delivered by Jacobsohn to appellants August 20th, 1859, at which period he had long ceased to be the agent of Ullman.

At the time the appellants discounted these notes for Jacobsohn, they already held the written guarantee of one Samuel French as security for payment of the old indebtedness.

At the trial before Mr. Justice WOODRUFF and a jury, the appellants' counsel requested the court to charge as a matter of law that the plaintiffs were entitled to recover. He preferred to let the case go to the jury and declined that request, to which the appellants' counsel excepted. The jury found for the respondents. At special term Mr. Justice MONCRIEF denied appellants' motion for a new trial; from which verdict of the jury and order of special term the plaintiffs now appeal. The following are the points presented by the counsel for the appellants and respondents.

JEREMIAH LAROCQUE, *for appellants.*

I. Upon the above uncontradicted and undisputed facts the plaintiffs were clearly entitled to recover.

The defendants, being partners, one made and the other indorsed the notes and delivered them to Jacobsohn, who had authority to receive them as part consideration of a contract they had already made with Ullman. They after-

wards, in their own wrong, varied their contract with Ull-man to their own prejudice, and after they had done so, Gosche, one of the partners, goes to the plaintiffs with Jacobsohn, and being aware that the notes are about to be negotiated to them, at least makes no objection, and does not claim that there is any defence to them; and the plaintiffs thereupon discount them and give value for them, by accepting them as payment of a debt for which they held a guarantor, whose liability was discharged by that acceptance, of payment, and extension of credit until the maturity of the notes. The two defendants being partners at the time, Palmer was of course bound by the acts of Gosche. (*Fellows* agt. *Prentiss*, 3 *Denio*, 512, *and cases cited; Dezell* agt. *Odell*, 3 *Hill*, 215, *and cases cited; Merchants' Bank* agt. *New Haven R. R. Co.*, 4 *Duer*, 521, 527, *per* SLOSSEN, *J.*, *and* 545, *per* BOSWORTH, *Ch. J.*)

II. The learned judge evidently omitted to charge as requested by the plaintiffs' counsel, only *ex abundanti cautela*, and in full confidence that the jury could find no other verdict than for the plaintiffs.

III. The jury has evidently disregarded the instructions which the court did give, from considerations with which they had nothing to do; that the plaintiffs had two shares of Academy of Music stock, from which they possibly might realize the debt.

IV. The plaintiffs were, therefore, entitled to the instructions which they asked to have given to the jury, and the verdict was also contrary to the uncontradicted evidence in the case, and in open disregard of the instructions which the court did give to the jury.

EDMUND BLANKMAN and J. K. FURLONG, *for respondents.*

The facts which are proved by the evidence in the cause hereinbefore referred to, show:

I. That the two notes upon which this action is brought, were obtained by Jacobsohn from the respondents, Gosche

and Palmer, by means of fraud and false pretences, which, by the laws of this state, is made a felony—section fifty-three, part four, chapter one, article fourth of the Revised Statutes declares " that every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretence, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing; upon conviction thereof shall be punished by imprisonment in a state prison," &c., &c.    (*Vol.* 3, *R. S.*, *5th ed., pp.* 955, 956.)

II. The two notes in question having been obtained from the respondents by means of such false pretences, by Jacobsohn, he, Jacobsohn, gained no title thereto, nor could he confer a title thereto to a third party; and to call the alleged transfer by Jacobsohn to Duncan, Sherman & Company, a valid delivery in law, is a palpable misnomer.

III. That the act of Jacobsohn, through which Duncan, Sherman & Company are compelled to make title, was a fraud, and conferred no title or right upon the appellants, Duncan, Sherman & Company, as against the respondents, Gosche and Palmer.

IV. The two promissory notes were property in law, and the value of such property is the amount expressed therein. (*Brower* agt. *Peabody*, 13 *N. Y. R.*, *p.* 125; 3 *Kernan R.*)

An argument is unnecessary to prove that a title thus derived cannot be urged to the prejudice of the true owner. The familiar principle is thus stated in *Saltus* agt. *Everett* (20 *Wend.*, 267,) " Property in things movable can only pass from the owner by his own act and consent, except in those cases only where such owner has, by his own direct voluntary act, conferred upon the person from whom the *bona fide* vendor derives title, the apparent right of property as owner, or of disposal as agent."

V. The respondents, in the eye of the law, never for an instant, have parted with the possession, or right of pro-

perty, in the two promissory notes now in question, unless this court decides that the right of property and the possession thereto can be gained or acquired by means of the commission of a felony—which would, indeed, be contrary to all law, and in direct violation of the rules and principles laid down by the court of appeals in the case of *Brower* agt. *Peabody*, before referred to, and there established as the law of this state, " that a title derived," as in this action, " cannot be urged to the prejudice of the true owner."

VI. It may be urged by the appellants that the respondents failed to give immediate notice to them of the acts of Jacobsohn; but an error in judgment of this sort, if it was one, cannot divest them of their property, or create a title in the appellants.   So held by the court of appeals in the cases of *Brower* agt. *Peabody*, (13 *N. Y. R.*, 3 *Kernan*; *Robinson* agt. *Dauchy & Flood*, 3 *Barb. S. C. R., p.* 20.)

VII. That the appellants gained no title to these two notes by the transfer of Jacobsohn.

1st. Because Jacobsohn was not in a condition, nor had he the right to confer title of the two notes to Duncan, Sherman & Company, he having no title thereto himself; he having only, at best, the wrongful and fraudulent possession thereof.

2d. The appellants parted with nothing on the transfer or receipt of these notes.

VIII. The appellants do not show that they received the two notes in good faith for their value; but, on the contrary, the evidence on both sides shows that they became possessed of the notes as a sort of speculative agents for Jacobsohn; and, therefore, they gained no title to the notes as owners and holders, as against Gosche and Palmer.

*Case* agt. *The Mechanics' Banking Association*, (4 *Com. R., p.* 166,) where the principle is laid down, " that where the paper is shown to have been put in circulation fraudu-

lently, the holder must show that he received it in good faith for its value."

IX. That if the appellants shall contend, that because they gave credit for the amount of these two notes upon an antecedent indebtedness, they have title thereto, as is stated by one of the witnesses in this cause, then our answer is, that that is not parting with value. (*Stewart* agt. *Small and others*, 2 *Barb. S. C. R.*, 559; *Farrington* agt. *Frankfort Bank*, 24 *Barb. S. C. R.*, 554.)

X. If it shall be contended, that because the appellants consented to, and did receive these notes as security for payment of the antecedent debt of Jacobsohn, that therefore they have such title thereto as to entitle them to maintain this action; our answer is, in the language adopted by Chancellor WALWORTH, in delivering the opinion of the court of errors in the case of *Stalker* agt. *McDonald*, (6 *Hill*, *p.* 96 :) " Where he," the holder of the note, " has received it for an antecedent debt, either as a nominal payment or as a security for payment, without giving up any security for such debt which he previously had, or paying any money or giving any new consideration, he is not a holder of the note for a valuable consideration, so as to give him any equitable right to detain it from its lawful owner."

XI. The appellants parted with nothing when they received the notes from Jacobsohn. They had at and before the receipt of these notes, as security for Jacobsohn's indebtedness of $3,390.39,

Two shares of Academy of Music stock, worth $1,000 per
  share, . . . . . . . . . . . . . . .   $2,000
One note, . . . . . . . . . . . . .       390
One note drawn by Holligan, . . . . . . . .   1,340
                                          ――――――
                                          $3,730

besides the written guarantee of French, none of which have they surrendered or discharged, but they still retain and

hold the same as before they received the two notes from Jacobsohn, leaving Duncan, Sherman & Co. in as good a condition, after the alleged transfer of these two notes, as they would have been had no transfer taken place.

XII. The rule of law as to what constitutes a *bona fide* holder, for a valuable consideration, is well settled in the case of *Stalker* agt. *McDonald*, (above referred to,) (6 *Hill*, *p*. 112.) LOTT, senator: "To bring a case within the exception, it is not enough to show that there was a consideration for the transfer, sufficient as between the holder and the party transferring, but the consideration must be such as the law denominates a valuable one." In *Coddington* agt. *Bay*, (20 *Johns. R.*, 637,) a case decided by this court, in which the principle of the exception was fully discussed, Mr. Justice WOODWORTH said: "Something must have been paid in money, or property, or some existing debt satisfied, or some new responsibility incurred in consequence of the transfer; this would be paying value, and making out a consideration within the reason and meaning of the rule." (*Id.*, 646.) Chief Justice SPENCER there remarked, "I understood, by the usual course of trade, not that the holder shall receive the bills or notes thus obtained as securities for antecedent debts, but that he shall take them in his business, and as payment for a debt contracted at the time." (*Id.*, 651.) Mr. Senator VIELIE observed that, "though indemnity for responsibilities is undoubtedly a good consideration for the sale or transfer of goods or negotiable paper, as against the party making it, or his representatives, yet in none of the cases cited on the argument, and in no one that I have been able to find, has it ever been held to bar the true owner upon a fraudulent transfer." (*Id.*, 653.) He added: "The true test I take to be, that when the holder is left in as good a condition, after a transfer, as he would have been had no transfer taken place, then the title of the owner," in this cause the respondents, "shall prevail."

XIII. It was purely a question of fact, and very properly left to the jury, as to whether Duncan, Sherman & Company parted with any consideration or value on the credit of the notes in question.

XIV. That the evidence shows that the notes came to the possession of Jacobsohn without any consideration and by means of fraud; and it was purely a question of fact for the jury to determine as to whether the appellants, Duncan, Sherman & Company, parted with value or security at the time they received the transfer of the same.

XV. That the evidence on the part of the appellants, at most, shows only that the notes in question were received by Duncan, Sherman & Company as a "further security" for the indebtedness of Jacobsohn, and not as a discharge of any securities, or payment of any indebtedness.

XVI. That it is nowhere assumed or pretended, by the appellants, that any indebtedness created by Ullman himself to them was ever discharged or satisfied by reason of the possession of these two notes by Duncan, Sherman & Company; nor that Gosche or Palmer ever received a dollar in consideration for the making or indorsing of the notes, or that the transaction between Duncan, Sherman & Company, and Jacobsohn, in relation to these notes, was to benefit anybody save Jacobsohn himself.

XVII. For the reasons and matters hereinbefore stated, the respondents were entitled to a verdict, and the judgment and order of the court at special term should be affirmed.

By the court, MONCRIEF, Justice. The case was one proper to be submitted to the jury. There were questions of fact to be determined, and it would have been error to have granted the motion made on behalf of the appellants, and directed a verdict against the defendants. (*Cobb* agt. *Cornish*, 16 *N. Y. R.*, 602; 4 *Bos.*, 528; 3 *id.*, 474; 2 *id.*, 365.)

The jury were properly instructed as to principles of law applicable to the case; there is no exception to the charge

made by the court. The jury, among other things, were charged "that if the plaintiffs received the notes in suit only as further security, that would not discharge French, and they could not recover if the notes were without consideration, or were procured by false representations or fraud, or were misapplied."

The testimony clearly warrants the finding by the jury that the notes were without consideration. They were made in pursuance of the verbal arrangment of June 7th, which became inoperative by the subsequent written agreement of the 20th of June, by the terms of which the payment was to be and actually has been made to another party other than he to whom the notes were given; it is, therefore, unnecessary to examine the question whether or not the transaction between the defendants and Jacobsohn was fraudulent or not. The jury were warranted by the evidence in finding that the notes in suit were accepted, discounted and passed to the credit of Mr. Jacobsohn upon the books of the plaintiffs, only as a further and additional security for the payment of the sum due to them from Jacobsohn.

The transaction between the plaintiffs and Jacobsohn was not presented to the jury, by the testimony of either Mr. Sherman, one of the plaintiffs, or of Mr. Jacobsohn, so clear and unmistakeable as to lead me to believe they erred in not finding that the notes were taken as an absolute payment of such an amount of Jacobsohn's indebtedness. Mr. Sherman says: " We consider both Ullman and Jacobsohn liable to us." Again qualifying the previous statement, " we took the two notes now in suit as payment; if I should not realize anything on the notes we received, I shall hold these shares (of stock of the Academy of Music received prior to the notes and transferred to the plaintiffs as collateral for the indebtedness of Jacobsohn) as collateral." Jacobsohn says: " The understanding was, that if these notes were paid, I was to get back the stock." Again:

" The understanding was, when I delivered them to Sherman, that when these notes were paid, I was to get back my stock."

In my opinion the verdict was not against evidence, and the exception taken to the refusal of the judge to direct a verdict is untenable; the judgment and order refusing a new trial should be affirmed.